Thanks to counsel on both sides. And we will move on to the fourth case of the day, Atlantic Gardens stay within my reach this Good morning, your honors, and may it please the court. My name is Brian Casey. I'm with Florence and Thornburg, and I'm here on behalf of Juan and Maria Garcia. This case is about how to interpret a commercial general liability policy under Indiana law. As such, it's governed by well-accepted canons used when interpreting insurance contracts in Indiana. These include that you interpret a contract from the perspective of an ordinary policyholder of average intelligence. When reasonably intelligent people can interpret the policy's language differently, that means there's an ambiguity, and you construe those ambiguities and those policies strictly against the insurer. This is especially true when you're talking about language that purports to exclude coverage. When there are exclusions at issue and the exclusions are not clearly and plainly expressed, the policy will be construed most favorably to the insured to further the basic purpose of indemnity. And lastly, where ambiguity exists because of the language used, the ambiguous terms are construed in favor of the insured for summary judgment. What I'd like to do is give a real brief synopsis of the factual background and then explain why the district court got it wrong with respect to the claims and process exclusion and then got it right with respect to at least its leaning with respect to the pollution exclusion. In 2004, Juan and Maria Garcia purchased commercial property in Lake Station. They expected to rent it to a relative until they moved there. Every year thereafter, they dutifully purchased commercial general liability policies. About five years up until 2009 with colony insurance, then in June of 2009, and again in 2010 with Atlantic Casualty, and lastly with and thereafter with capital indemnity. In September of 2014, the Garcias learned for the first time that there was contamination under their property. They learned it from their next door neighbor who had a site assessment done in July, was handed and given to them in approximately September. Once they learned about that, and there's no question that the Garcias didn't contribute to the contamination of the property. They lived in California, never even lived in this property. In September of 2014, via counsel, the Garcias learned that there was a 2009 letter from IDEM with respect to this property that went somewhere else. It never went to the Garcias. So they were not on notice at all of anything that IDEM was asking about in 2009. Then in November 2014, the Garcias submitted claims to all three of their insurers seeking indemnity and defense costs. Two of those insurers accepted their obligations. The Atlantic Casualty, on the other hand, chose to sue. In 2015, they began the process of site assessment, learned that the contamination was largely or exclusively in connection with the prior operation at that facility of a dry cleaner. So the contaminations in the groundwater is principally volatile organic compounds, PERC, TCE, TCA, DC, things of that nature. So, as I said, they then entered Indiana's voluntary remediation program and began remediating the site. So as I said, Atlantic sued for declaratory judgment saying they were under no obligation to defend or indemnify the Garcias. The Garcias counterclaimed saying that they were and that the Atlantic Casualty had breached a contract and breached their duty of good faith, or acted in bad faith. And then in 2017, the district court entered summary judgment focusing on the- Can we talk about the claims exclusion? Sure. The claims and process exclusion? The claims and process exclusion, yeah. Yeah. First of all, the common law doctrine of known loss would apply regardless of policy language, right? That would be true. Yes, Your Honor. As a matter of fact, it's specifically mentioned in the policy. And so looking at the language of particularly paragraph one of the claims exclusion, claims and process exclusion, I guess it seems to me not that difficult to read it the way the district court did. That is, that what we have here is a claim for damages arising out of property damage which first occurred prior to the inception date of the policy. Well, Your Honor, and that is how the district court and Atlantic have read it. I would suggest that it is equally reasonable to interpret it a different way. And I would focus on first the title of the exclusion, which is claims and process. How about focusing on the title of total pollution exclusion? Well, Indiana has said since Kiger in 1996, said very clearly what that means in Indiana. Let's not rely too much on titles. Well, there is something to be gained from titles, the Bright case which we said mentioned that. But also the structure of the claims and process exclusion and the text of it supports our conclusion, as does its relationship with the other parts of the policy, as it does with, is also more consistent with Indiana case law. So let's take a look at the structure. The structure says, the claims and process exclusion, the first part says, excludes coverage for, quote, any loss or claim for damages arising out of or related to bodily injury or property damage, whether known or unknown, A, which first occurred prior to the inception date of the policy, or B, which is or alleged to be in the process of occurring as of the inception date of the policy. Part 2 then says, any loss or claim for damages, uses the exact same words, any loss or claim for damages arising out of or relating to bodily injury or property damage, whether known or unknown, which is in the process of settlement, adjustment, or suit, as of the inception date of this policy. So the key language that we're having a disagreement about is the, any loss or claim for damages arising out of or relating to bodily injury or property damage, whether known or unknown. If you look at Section 2, you don't have bodily injury or property damage that's ever in the process of settlement, adjustment, or suit. What you have is a loss or claim for damages. But you do have, how is a claim for damages occurring or in the process of occurring? That seems to refer to the bodily injury or property damage in paragraph 1. Well, it isn't necessarily, and a claim can occur over the life of the claim. Occur is not part of the specially defined language in that policy. So we have, we do have some questions as to what it means for a claim to occur. So do I. It doesn't make much sense to me. Well, I would say it's no different than, for example, arise, but from our perspective, it's the whole first bucket from any loss or claim to whether known or unknown, which is modified by the, which is in the process of settlement, adjustment, or suit. Say that again. That the, when you're looking at 2. I'm looking at 1. I understand. But it's. And my concern is that your interpretation of 1 makes 2 redundant. I would have a hard time understanding any version of 2 that doesn't, that isn't necessarily redundant. The district court makes 2 even more redundant, Your Honor. And because you would always have a claim that is, which first occurred before it would be in the process of suit, settlement, or adjustment. You can't have a claim that is being adjusted before it occurs. So on some level, under our interpretation, 2 has more meaning if you're focusing on the, what is, what the which clause is modifying is the any loss or claim for damages. And there's certainly no reason to believe that what happens, that the language any loss or claim for damages, you know, through known or unknown, means something different in Section 1 than Section 2. That would make no sense. They're parallel, Your Honor. And so if what, in Section 2, what is obviously referred to being modified is the any loss or claim for damages. There's no reason to believe, or at least it is a reasonable interpretation to believe that in Section 1, again, everything that's after the which clause is interpreting, is modifying the any loss or claim for damages, okay? And so what we have, and if you take a look at the Atlantic position, they also vacillate as to what the triggering event is. When the, at some point they say it's the injury or property damage that creates the exclusion. At other points they say, oh no, it's the 2004 letter that went to the preceding property owner that creates the exclusion. So even they aren't reading Sections 1 and 2 in any kind of consistent way. And so the fact that they themselves are reading it inconsistently, again, suggests it's ambiguous and unenforceable. I'd also suggest that if the exclusion means what they say it does, so that a claim is excluded even if the damage is unknown, that makes the known loss doctrine entirely superfluous. Because what we're saying, what the policy says is, if you know about it, then we're not covering it. That's essentially an exclusion. That's common law. Right, right. But it's also in the body of the insurance agreement too. And now they're saying, even if you don't know about it. So what's the point of the known loss doctrine? Even if you don't know about it, then that could exclude coverage, okay? But also say, if you compare the various exclusions in the policy, every other one of them begins with bodily injury or property damage. Here what it begins with is any loss or claim for damages, blah, blah, blah. That means something different. If they just wanted to say that bodily injury or property damage is excluded, all that first, all that preamble-ish stuff, again, is superfluous. The focus of this exclusion, unlike the others, is on a loss or claim for damages that occurred where the loss or claim occurred before the inception date of the policy. Can I ask you a quick question, Mr. Casey, about the difference between loss and claim for damages? Maybe Mr. Harney can clarify this for me as well. Are we just talking about the difference between first party and third party liability coverage there? The loss is the damage to the property that's insured and the claim for damages is the third party. I think that could be a reasonable interpretation, Your Honor. Neither loss nor claim is specifically defined in the policy. There's an understanding in the insurance business. Yeah, I would think that's right. If I could just, for one moment, given that I'm already into my rebuttal time, I think it's clear that the district court's leaning was correct with respect to the policy exclusion. Since Kiger through Flexstar in Indiana, you have to specifically identify the contaminants. They haven't done that here. Do you read Indiana law as prohibiting a reference to another list? It says you need to specifically identify the contaminant. You read Flexstar as prohibiting just a reference to an authoritative list somewhere? What Flexstar says, the words of Flexstar, it needs to specifically identify the contaminant. Pointing to the whole corpus of federal, state, and local law and saying it's in there somewhere, that's not specifically identifying the contaminant. And certainly, it's not specifically identifying it for an average policyholder, an ordinary policyholder of average intelligence. Let me just ask you, here's what's frankly bugging me about this case. We've got the Garcias buying a commercial property. They know it's been used for a dry cleaning business, right? No, they don't know. They don't know that? No, they don't. The dry cleaning ... Do they check? You know what?  not when you're buying a policy. There's actual notice is what they talk about. Actual knowledge is what triggers your obligation to explain it to the insurer. So the theory, though, is they're buying commercial property without any environmental investigation, and they buy a CGL policy that has a total pollution exclusion, and the position is that they're entitled to total pollution coverage, right? Not total pollution coverage, but the exclusion does not exclude what has contaminated their in the policy, and that's been true. There's five Indiana Supreme Court cases that all say that, up to and including Flexstar. I'd like to leave what's left of my time for rebuttal, if I could. Thank you, Mr. Casey. Thank you. Mr. Harney? Thank you. May it please the court. My name is Edward Harney. I'm here for Atlantic Casualty Insurance Company. I think the questions that you've posed is exactly the reasons why Atlantic Casualty was put in a position to need to look at adding things to the total pollution exclusion and redefining the pollutants definition, and also to add the claims in process exclusion. As the court well knows, Indiana is in a minority of jurisdictions that has looked at the pollution exclusion and found for insurers, finding that pollutants is ambiguous as defined, and as such, it is construed against the drafter, that being the insurance company, and coverage is found. And so with that unique situation that Indiana and some other minority jurisdictions have need to go to the next step, which is to exclude these types of losses. And what we have here in this case, Judge, 45 years of dry cleaning operations. I mean, that's really what we're looking at trying to get coverage for, or the Garcia's are trying to get coverage for, is artistic cleaners, operations on this particular site that with even a little bit of due diligence would have been clearly known. As the court may well know, Indiana maintains a virtual file cabinet where one can type in the address where one is looking at purchasing property or looking at finding out whether or not there has been any environmental claims, and when you go to that virtual file cabinet and you type in this particular property, you can see that artistic cleaners was already in the process of these issues and problems before they sold this property to the Garcia's in 2004. And that kind of dovetails, Judge, into these two exclusions. Now the district court looked primarily at the claims in process exclusion, or at least that was the reason for finding summary judgment was appropriate in favor of Atlantic casualty, and then touched on the pollution exclusion as well. And I think as Judge Hamilton posed to Mr. Casey, it doesn't seem too difficult to read as the district court read it, that is the claims in process exclusion. One of the problems with that interpretation, though, is that it seems that we have to do something different grammatically with, if we want to get really textual here, with the paragraph one and paragraph two, with different antecedents. One referring to bodily injury and property damage, and second referring to any loss or claim for damages. That is at least a little awkward. Why isn't it enough to make this ambiguous? Well, I don't think it's enough to be ambiguous, because even if one part of the particular exclusion might be something different interpretation, it certainly doesn't nullify that which is exclusion. And you're right. You asked Mr. Casey about any loss or claim for damages, and that's how the claims in process exclusion starts. Any loss, which I think anybody in the insurance industry looking at that particular language is, that's what insurance policies cover, losses. The insurance policies cover losses. So I'm not sure that could be any more clear. And then it's an or, or a claim for damages. So if we're looking at this particular case, it's any loss, whether on or unknown, and then we go into the section A and B of 1, which first occurred prior to the inception date of the policy, or which is, or alleged to be, in the process of occurring as of the inception date of the policy, which is exactly what we have in these pollution type cases, which since Kiger in 1996 have been up and down the appellate course in Indiana over and over. So what does our record here show about the origins of the claims in process exclusion? I don't think the record shows anything with respect to the actual origin. And when it was introduced, for example? Judge, I, yeah, we just had the 2009 and 2010 policies here. Okay. Yeah. And if you look, Judge, it doesn't appear, as we look across the country, that there have been many cases that have looked at this particular exclusion, and it would appear that Indiana somewhat will be riding on a blank slate. But... Okay. Does Atlantic Casualty offer a separate pollution rider? That's not in the designated evidence, but my expectation is... Commercially. Commercially. If somebody says, we're buying a risky property, we want to buy insurance, and I assume you'd say, well, we want to actually check and see what's there first, right? I certainly don't want to misspeak, but certainly in my experience with commercial general liability carriers, there are those policies. There are those policies where somebody can pay a rather exorbitant sum, because that's what we're talking about in these cases, and we're looking at 45 years of dry cleaning pollution. You know, we're talking about exorbitant sums, versus a commercial general liability policy, which... Right. Okay. Let me ask you, if I could, Mr. Harney, about the pollution exclusion. Frankly, I see some pretty clear signals in Flexstar indicating that at least an authoritative reference would be appropriate to an authoritative list of covered, or rather, excluded pollutants. I have a big problem with this particular version, with the material safety data sheets, which, as I understand them in federal law, are very much contextual. That is, whether a data sheet is required, which is the term in the policy, will depend to a great extent on the nature of the employer's business. It comes from OSHA, and it deals with employee safety, right? And there are situations where, for example, as I understand it, sodium chloride salt can require a safety data sheet, but a lot of others where it wouldn't, or flour dust, or wood dust, or ink cartridges, and so on and so forth. And so, you can't tell whether an MSDS is required without knowing an awful lot about the context of the situation, and how the substance is used. Your Honor, my understanding of how OSHA deems whether or not something is required to have an MSDS sheet is whether or not the material is hazardous, and they look at two things. But it's in context, right? It certainly can be in context, but at the same time, oftentimes you'll see, you know, an inoculate... You mentioned salt, but water would be another, relatively innocuous, but clearly, under certain circumstances, perhaps, you know, that it's going to be hazardous. But OSHA doesn't look at water, and I've never seen a single time where water has been one that you would think would be a hazardous substance. But I think when we're looking at the kind of trick bag that the Indiana Supreme Court has put insurers in, saying, well, you've got to do something that apprises the insurer of what they're not getting coverage for if you're going to exclude it, certainly with the first reference in the pollutants, the first clause of the definition, or all material for which a material safety data sheet is required, that's something that certainly is going to apprise someone that... And I think anybody that's, you know, involved in any kind of commercial enterprise kind of knows of those types of things if they're looking at what may or may not be hazardous to an employer, either from a health risk or from a physical property risk. Yeah, but in this kind of a context, though, when you're talking about prior operations, years earlier, how do you figure that out? Well, I think going back to what you said, we've got folks buying a commercial piece of property. Right, but we've got a policy that's written in the present tense. Agreed. Is required. We've also got some pretty nasty stuff here, but I have trouble with whether the MSDS tactic works for purposes of the Indiana Supreme Court. And I can certainly understand where that's a problem, because when you look at FlexStar, FlexStar, interestingly, looked at another policy provision that wasn't even involved in the particular case. That FlexStar language included CERCLA and this and that, and they were trying to look at other federal statutes because, as Mr. Casey would like the court to look at a pollutants exclusion is, you'd have to list, you know, one, two, chloroethylene, benzene, one, two, three, trichloroethylene. You would have to list every single possible derivative, contaminant to possibly exclude anything, which is exactly what we have in this case. If you look at the record, you know, the environmental assessment talks about the myriad. And so trying to find that enough to imprise the insurer as to what they're not going to do with the total pollution exclusion is, I think it walks the edge of giving enough apprising to the insured with MSDS sheet, without just saying, hey, and everything that's ever been listed in any CFR, because I'm not sure how an insurer is ever going to list. Now, we do have heating oil. So I think in this case, Judge, that clearly is excluded, and that is one of the contaminants of the MSDS. That was there pretty much in trace amounts, though, wasn't it? It was. It was, Your Honor. Not a big deal. Yeah, there were six tanks. Most of them were stoddard solvents. And then, which are petroleum-based, you have that issue. And then the constituent parts, again, which you couldn't possibly, no insurer could possibly either write everything down or put it into policy. And so they're looking at something that's somewhere in the middle. And MSDS sheets, and I think it's special in this day and age of internet access and Google access, one could determine pretty easily whether or not an MSDS sheet is required. Where do I go for an authoritative list of MSDS sheets? Well, authoritative, I think that is somewhat problematic, because like you said, it's in the present tense, and things are going to change depending upon particular situations. But in these particular cases, the designated evidence is clear that Mr. Stevenson, the Garcia's retained consultant expert, said, no doubt, every single one of these would be required to have MSDS sheets. This is not even a question. We're not talking about salt or water in this particular case. I think you have to look at the claims in process exclusion, and I think that's what the court should direct its initial attention to on this particular case with these particular facts. Pollution in the process of occurring over all this period of time is exactly what the claims in process. Could you address the problem of redundancy? In essence, it sounds like both of your theories, or the district court's theory and the Garcia's theory, wind up making paragraph two rather redundant. Well, I don't think it's redundant, because as you're looking at drafting these types of exclusions, and you're trying to articulate as best you can particular hypotheticals and figures, exactly what actually we have in this case. Any loss or claim for damage arising out of, and we'll go to property damage, because clearly we're not talking about bodily injury, whether known or unknown, which is in the process of settlement, adjustment, or suit. Well, this particular situation, Judge, when the Garcia's bought this property, Artistic Cleaners was in the process of doing just that. So when you're trying to draft that where it could clearly be a situation where either a prior policy holder, or they could have been adjusting if the Garcia's, when they purchased the 09 policy, perhaps had already gotten notice from IDEM in 2007, 2008, were in the process of adjusting it, that makes it very clear that that type of suit would not be covered, and especially when you consider Indiana's law on the continuous trigger issues and the continuing problems with these pollution problems, Section 2 would address precisely that. If the Garcia's knew in 2008, had gone to IDEM, had submitted their VRP application, had gone through the process, and then in 2009 submitted an application for CGL policy with Atlantic Casualty, that clearly is where 2 would become appropriate, and even more particular, the exclusion that would be applicable in the case. But I think it's the same situation with Artistic Cleaners again. It's in the process of being adjusted, settlement, or suit when this claim, or rather when the policy incepts with Atlantic Casualty. Insurance policies, as the Court will know, are entitled to be read and given operation to the terms. It's supposed to look at the policy as a whole, and when you look at this policy as a whole, Judge, as you alluded to, total pollution exclusion, added claims in process exclusion, trying to very clearly apprise the policyholder that these types of claims aren't covered. Other types of claims involving bodily injury, property damage are, but these types of claims are not. For that reason, we would ask the Court to affirm the District Court's opinion in all that it doesn't find the claims in process was the appropriate mechanism for granting summary judgment, that it would find that the pollutants definition satisfies Indiana  Thank you, Your Honor. Thank you, Counsel. Let's see. Mr. Casey, how much time? Take two? Mm-hmm. Two minutes? Appreciate it, Your Honor. A couple things about the claims in process exclusion. There just isn't a reasonable due diligence requirement, either under Indiana law or in the context of this policy. If the insurers were interested in people going out and affirmatively doing due diligence, they could have said if you knew or had reason to know. Every notice is defined in terms of actual knowledge. That's what the known loss doctrine, again, is addressing. If you have actual knowledge, then you're not covered. Under their view, even if you don't have actual knowledge, you're not covered. I think I might have heard counsel say something different than he said in the brief. You don't have a loss until you know about it. It's unquestioned that the Garcias didn't suffer a loss or have a claim for damages until 2014, when they found out that IDEM was interested in them. Honestly, they probably didn't suffer a loss until they entered the voluntary remediation program. To the extent the claims in process deals with any loss or claim for damages, which occurred before the onset of the policy, they didn't have a loss or claim for damages. What the district court had said was, well, there was damage, regardless of whether you had a loss or claim for damages. That's what the district court decided. Under our view, they didn't have a loss or claim for damages. No, they've got a claim arising from earlier damage. That is what I think is more what the provision deals with. It's not that the damage preceded, but was before inception. It's the loss or claim for damages, which preceded the inception. Now, if I could turn briefly to the pollution exclusion for just a minute. There's just one page in our expert's report. It's not like if this was something that would be difficult to itemize. As you pointed out, Your Honor, there isn't a uniform, omnibus place where you can find MSDS sheets, what chemicals are governed by MSDS sheets. You have to understand that that's in CERCLA. You then have to go into 29 CFR 1910. Even then, OSHA has a long list of guidance where some things are and aren't. But if you look in our appendix 664, what's at issue here is PCE and resulting daughter chemicals, TCE, TDCE, 1DCE, 1,1DCE, and vinyl chloride. That's it. It's not an enormous list. Thank you, Counsel. Thank you, Your Honor. All right. Thanks to counsel on both sides. The case is taken under advisement.